

EOD
04/21/2022

. IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| IN RE: | § | |
|---|---|---|
| | § | |
| **Larry S. Jenkins** | § | Case No. 19-10567 |
| **Jennifer W. Jenkins** | § | |
| | § | |
| Debtors | § | Chapter 13 |

# MEMORANDUM OF DECISION

Before the Court for consideration is the "Second Motion to Modify Confirmed Chapter 13 Plan" ("Motion") filed by the Debtors, Larry S. Jenkins and Jennifer W. Jenkins ("Debtors"), on January 17, 2022. Debtors seek to modify their previously confirmed Chapter 13 plan pursuant to 11 U.S.C. § 1329 for multiple reasons, including the need to surrender collateral pursuant to Section 3.6 of their plan. The Chapter 13 Trustee objected to the Motion, but the objection has been resolved. Mobiloil Federal Credit Union ("Mobiloil FCU") also objected to the Motion. That objection remains unresolved. The Court conducted a hearing to consider the Motion on March 31, 2022, at which counsel for Debtors and Mobiloil FCU appeared, as did Lloyd Kraus, the Chapter 13 Trustee.

The Court finds that the Motion was properly served pursuant to the Federal and Local Rules of Bankruptcy Procedure, and that it contained the appropriate twenty-eight (28)-day negative notice language pursuant to LBR 3015(h), which directed any party opposed to the relief sought by the Motion to file a written response

within twenty-eight (28) days or the Court would deem the Motion unopposed. Other than the Chapter 13 Trustee and Mobiloil FCU, no other creditor or party-in-interest objected. After consideration of the Motion, the objections, the evidence submitted by the parties, the relevant legal authorities, and the arguments and presentations of the parties, the Court concludes that the Motion should be **GRANTED** and the modified plan **CONFIRMED** for the reasons stated in this Memorandum of Decision.[1]

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). The Court has the authority to enter a final judgment in this contested matter because it constitutes a core proceeding pursuant to 28 U.S.C. §§§ 157(b)(2)(L), (b)(2)(B), and (b)(2)(A).

## II. Factual and Procedural Background

Debtors, Larry S. Jenkins and Jennifer W. Jenkins, filed their voluntary petition for relief under Chapter 13 and their original Chapter 13 Plan ("Plan") on December 3, 2019.[2][3] Debtors' original Plan was confirmed on February 27, 2020.[4] Mobiloil FCU did not object to confirmation.

---

[1] As set forth in the final paragraph of this memorandum, the Court will enter a separate order granting the Motion in the form required by TXEB Local Form 3015-e upon submission of a proposed order as directed.

[2] *See* Petition, ECF No. 1; *see also* Mobiloil FCU Ex. E, ECF No. 76.

[3] *See* Plan, ECF No. 2; *see also* Mobiloil FCU Ex. F, ECF No. 76.

[4] *See* Order Confirming Plan, ECF No. 22; *see also* Mobiloil FCU Ex. G, ECF No. 76.

Mobiloil FCU holds two secured claims against Debtors, both of which were provided for under the terms of the original Plan. Mobiloil FCU's first claim is secured by a 2014 Ford Flex vehicle.[5] The Plan treated the Ford Flex claim as a fully secured claim pursuant to the hanging paragraph of 11 U.S.C. § 1325(a)(*), which excepts certain claims from bifurcation under 11 U.S.C. § 506(a).[6] Mobiloil FCU's second claim is secured by a 2012 Dodge Durango vehicle.[7] The Dodge Durango claim was bifurcated and treated as a partially secured claim pursuant to 11 U.S.C. § 506(a).[8] On July 20, 2020, Debtors objected to the Dodge Durango claim in order to establish the value of that vehicle pursuant to § 506(a).[9] The Court sustained Debtors' claim objection on August 24, 2020, allowing the Dodge Durango claim to be treated as a secured claim in the amount of $12,425.00. The balance was classified as a general unsecured claim.[10] Mobiloil FCU did not respond to Debtors' claim objection.

---

[5] *See In re Jenkins*, Case No. 19-10567 Claim Register, Proof of Claim #3; *see also* Mobiloil FCU Ex. A, ECF No. 76.

[6] *See* Plan, ECF No. 2; *see also* Mobiloil FCU Ex. F, ECF No. 76.

[7] *See In re Jenkins*, Case No. 19-10567 Claim Register, Proof of Claim #1; *see also* Mobiloil FCU Ex. B, ECF No. 76.

[8] *See* Plan, ECF No. 2; *see also* Mobiloil FCU Ex. F, ECF No. 76.

[9] Objection to Proof of Claim #1, ECF No. 24.

[10] *See* Order Sustaining Debtors' Objection to Proof of Claim # 1, ECF No. 22; *see also* Mobiloil FCU Ex. C, ECF No. 76.

Later, Debtors moved to modify their original Plan.[11] The Court approved that first modification.[12] It increased the amount of payments required, and reconciled the Plan with allowed claims pursuant to this Court's claims reconciliation process.[13] Mobiloil FCU did not respond to Debtors' first plan modification, which was approved by the Court.[14] Most recently, Debtors have moved a second time to modify their Plan.[15] Mobiloil FCU objects to this second proposed modification which is before the Court.

Mobiloil FCU objects to the Motion for two reasons. Firstly, the "surrender of collateral after confirmation of a previous plan is not authorized by 11 U.S.C. Section 1329" such that "the modified plan does not provide for payment in full of the secured claims of Mobiloil Federal Credit Union previously provided for under the Debtors' plan."[16] Second, the "surrender of the collateral in this instance is inequitable and improper due to depreciation in value and use of the collateral by Debtors during the

---

[11] *See* Motion to Modify Confirmed Chapter 13 Plan, ECF No. 52; *see also* Mobiloil FCU Ex. H, ECF No. 76.

[12] *See* Order Modifying Confirmed Chapter 13 Plan, ECF No. 60; *see also* Mobiloil FCU Ex. I, ECF No. 76.

[13] LBR 3015(g) governs the procedure for the determination of claims in Chapter 13 cases, including the establishment of a deadline for the filing of any motion for valuation of collateral to determine the amount of a secured claim in a Chapter 13 case. The Trustee's Reconciliation Concerning Claims (ECF No. 25) was filed pursuant to this procedure on August 4, 2020.

[14] *See* Order Modifying Confirmed Chapter 13 Plan, ECF No. 60; *see also* Mobiloil FCU Ex. I, ECF No. 76.

[15] Second Motion to Modify Confirmed Chapter 13 Plan, ECF No. 64.

[16] Objection by Mobiloil FCU to Second Motion to Modify Confirmed Chapter 13 Plan, ECF No. 70.

previous periods since the filing of this bankruptcy in 2019 to the present."[17] These arguments are addressed below. No other issues are contested by MobilOil FCU.

At the hearing on this matter, the Chapter 13 Trustee stated that his objections to the Motion had been resolved, and he recommended confirmation of the Debtor's modified plan. Furthermore, the Chapter 13 Trustee represented that Debtors are current on the payments required by the second modification Motion.[18]

The only witness to testify at the hearing was Debtor, Jennifer W. Jenkins. Mrs. Jenkins testified that Debtors filed their bankruptcy case because of financial difficulties, and that they have struggled lately to maintain their plan payments. Specifically, Debtors have struggled because of their son's Covid-19 diagnosis, mechanical failures of the Dodge Durango which necessitated expensive repairs, and a reduction in the overtime hours worked by Mr. Jenkins upon which they rely in part for income. Debtor's filed the second modification Motion to help lower their monthly plan payments to a more manageable sum, cure post-petition mortgage arrears, and help them better afford their ongoing mortgage payments.[19] In order to make these changes, Debtors seek to surrender the Ford Flex and Dodge Durango to MobilOil FCU.

---

[17] *Id.*

[18] Debtor, Jennifer W. Jenkins, also testified that Debtors are current on their plan payments under the second modification Motion.

[19] Debtors' plan payments are currently $1,400.00 per month under the plan as previously modified. The Motion seeks to lower that monthly payment to $1,140.00.

According to Mrs. Jenkins' testimony, the Debtors' son has primarily used the Dodge Durango. He paid Debtors $489.00 monthly for use of the vehicle, which they in turn contributed towards their monthly plan payments to the Trustee. The Durango does not currently run, and their son had to obtain another, more reliable vehicle due to mechanical issues with the Durango. Thus, he stopped paying Debtors each month, meaning they could no longer afford their plan payments, or afford to retain the Dodge Durango. MobilOil FCU's Dodge Durango claim is secured in the amount of $12,425.00, and the balance is classified as a general unsecured claim.[20] As of March 22, 2022, the Chapter 13 Trustee has paid Mobiloil FCU a principal amount no less than $6,745.87, and interest no less than $883.44.[21]

In comparison, according to Mrs. Jenkins' testimony, the Ford Flex runs and is in good condition. Debtors seek to surrender this vehicle purely to cut their expenses and lower their monthly plan payments. After the surrender of this vehicle, Debtors will only have a single vehicle to share for transportation, despite the fact that both Debtors work. MobilOil FCU's Ford Flex claim was allowed as secured in the full amount of $16,591.00. As of March 22, 2022, the Chapter 13 Trustee has paid Mobiloil FCU for the Ford Flex claim a principal amount of no less than $9,079.62, and interest no less than

---

[20] *See* Order Sustaining Debtors' Objection to Proof of Claim # 1, ECF No. 22; *see also* Mobiloil FCU Ex. C, ECF No. 76.

[21] Mobiloil FCU Ex. J, ECF No. 76.

$1,177.80.[22]

Debtors are prepared to surrender both vehicles to MobilOil FCU so they can be sold and the sale proceeds applied to the remaining amounts owed. The Motion provides that any deficiency balance after application of the sales proceeds will be treated as an allowed general unsecured claim.

### III. Analysis

The issue before the Court is whether 11 U.S.C. § 1329 permits Debtors to surrender collateral to MobilOil FCU as proposed in the Motion. No other requirements for plan modification appear to be contested by any party, and the Court finds Debtors have otherwise met their burden for approval of the Motion.

Courts are split over whether it is permissible to surrender collateral in a Chapter 13 plan modification, and there does not appear to be any direct authority from the Fifth Circuit on this question. There is, however, precedent from this Court allowing such plan modifications. In a decision by the Hon. Donald R. Sharp, such a modification was permitted where the collateral in question had already been surrendered and sold at auction. *In re Taylor*, 297 B.R. 487, 490-91 (Bankr. E.D. Tex. 2003). Other courts in the Fifth Circuit have similarly found Chapter 13 plan modifications to surrender collateral permissible, even when they denied the underlying modification motion. *See In re Sellers*, 409 B.R. 820, 827-29 (Bankr. W.D. La. 2009); *see also In re Hernandez*, 282

---

[22] Mobiloil FCU Ex. K, ECF No. 76.

B.R. 200, 206-208 (Bankr. S.D. Tex. 2002); *see also In re Anderson*, 545 B.R. 174, 182 (Bankr. N.D. Miss. 2015); *see also In re Tucker*, 500 B. R. 457, 461-62 (Bankr. N.D. Miss. 2015).

These decisions are not isolated, and many bankruptcy courts in other parts of the country have reached similar conclusions.[23]

A competing line of cases prohibits Chapter 13 plan modifications to surrender collateral. At the hearing, MobilOil FCU mostly relied on a Sixth Circuit decision which held that "a debtor cannot modify a plan under section 1329(a) by: 1) surrendering the collateral to a creditor; 2) having the creditor sell the collateral and apply the proceeds toward the claim; and 3) having any deficiency classified as an unsecured claim." *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 535 (6th Cir. 2000).[24] Some courts in the Fifth Circuit have followed *Nolan* and found that Chapter 13 plan

---

[23] *See In re Jones*, 538 B.R. 844, 847-48 (Bankr. W.D. Okl. 2015) (denying modification but holding that there is no prohibition against modification through collateral surrender); *see also In re Zieder*, 263 B.R. 114, 117-19 (Bankr. D. Ariz. 2001); *see also In re Brown*, 463 B.R. 134, 137-38 (Bankr. S.D. Ind. 2011) (allowing such modification but denying motion because not proposed in good faith); *see also In re Marino*, 349 B.R. 922, 924 (Bankr. S.D. Fla. 2006); *see also In re Boykin*, 428 B.R. 662, 667 (Bankr. D. S.C. 2009); *see also In re Fayson*, 573 B.R. 531, 537 (Bankr. D. Del. 2017); *see also In re Loden*, 572 B.R. 211, 218-19 (Bankr. W.D. Ark 2017); *see also In re Scarver*, 555 B.R. 822, 839-40 (Bankr. M.D. Ala. 2016); *see also In re Bowles*, No. 08-50065, 2009 WL 2601131, at *2-4 (Bankr. M.D. N.C. Aug. 19, 2009); *see also Coastal Credit, L.L.C., v. Mellors (In re Mellors)*, 372 B.R. 763, 773-74 (Bankr. W.D. Pa. 2007); *see also In re Mason*, 315 B.R. 759, 763-65 (Bankr. N.D. Cal. 2004); *see also In re Townley*, 256 B.R. 697, 699-700 (Bankr. D. N.J. 2000); *see also Bank One, NA v. Leuellen (In re Leuellen)*, 322 B.R. 648, 662 (S.D. Ind. 2005); *see also In re Disney*, 386 B.R. 292, 301 (Bankr. D. Colo. 2008); *see also In re Knappen*, 281 B.R. 714, 717 (Bankr. D. N.M. 2002).

[24] In the hearing on the Motion, MobilOil FCU pointed this Court to Judge Sharp's decision in *In re Taylor*, though this decision does not support MobilOil FCU's position. *In re Taylor*, 297 B.R. 487, 490-91 (Bankr. E.D. Tex. 2003)

modifications to surrender collateral are not permissible. *See e.g., In re Ramos*, 540 B.R. 580, 593 (Bankr. N.D. Tex. 2015); *see also In re Coffman*, 271 B.R. 492, 496 (Bankr. N.D. Tex. 2002); *see also In re Cameron*, 274 B.R. 457, 461 (Bankr. N.D. Tex. 2002). Other courts outside the Fifth Circuit have also followed *Nolan*.[25]

Upon reviewing the rationale underlying these authorities, this Court respectfully agrees with the weight of authority in favor of allowing a § 1329 modification to surrender collateral, so long as such modification is filed in good faith. In reaching its conclusion, this Court finds the reasoning of *In re Sellers* particularly persuasive. *See In re Sellers*, 409 B.R. 820, 826-27 (Bankr. W.D. La. 2009) (Summerhayes, R.).[26]

A chapter 13 plan "may" be modified as set forth in 11 U.S.C. § 1329 "at any time after confirmation of the plan but before the completion of payments under such plan . . ." 11 U.S.C. § 1329(a). Such a modification is permitted in part to:

---

[25] *See e.g., Sharpe v. Ford Motor Credit Co. (In re Sharpe)*, 122 B.R. 708, 709 (E.D. Tenn. 1991); *see also In re Conley*, 504 B.R. 661, 663 (Bankr. D. Colo. 2014); *see also In re Belcher*, 369 B.R. 465, 469 (Bankr. E.D. Ark. 2007); *see also In re Adkins*, 281 B.R. 905, 909–10 (Bankr. E.D. Mich. 2002), *aff'd*, 425 F.3d 296 (6th Cir. 2005); *see also In re Barclay*, 276 B.R. 276, 282 (Bankr. N.D. Ala. 2001); *see also In re Smith*, 259 B.R. 323, 326 (Bankr. S.D. Ill. 2001); *see also In re Jackson*, 280 B.R. 703, 705 (Bankr. S.D. Ala. 2001); *see also In re Goos*, 253 B.R. 416, 420 (Bankr. W.D. Mich. 2000); *see also In re Coleman*, 231 B.R. 397, 401 (Bankr. S.D. Ga. 1999); *see also In re Dunlap*, 215 B.R. 867, 870 (Bankr. E.D. Ark. 1997); *see also In re Holt*, 136 B.R. 260, 260–61 (Bankr. D. Idaho. 1992).

[26] Because neither MobilOil FCU nor Debtors argued that 11 U.S.C. § 502(j) is applicable to the Motion, this Court does not make a determination regarding the applicability of that provision. The court in *Sellers*, however, noted that under 11 U.S.C. § 502(j), "a reconsidered claim may be allowed or disallowed according to the equities of the case," and that § 502(j), "in conjunction with 506(a), allows for the reconsideration and re-classification of previously allowed secured claims in cases where collateral has been surrendered or repossessed after confirmation." *In re Sellers*, 409 B.R. 820, 827 (Bankr. W.D. La. 2009). The *Sellers* court further stated that "[n]othing in the language of sections 1329, 1325(a), 502(j), or 506(a) preclude the reconsideration of a claim in this manner after confirmation." *Id*.

> "(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan;"

*Id*. The court in *Sellers* found that:

> A modification to surrender collateral changes the confirmed plan by reducing the stream of payments due to the secured creditor to zero and, depending on the circumstances of the case, treating the remaining deficiency as an unsecured claim. The court agrees with *Leuellen* that such a modification falls squarely within sections 1329(a)(1) and 1329(a)(3).

*In re Sellers*, 409 B.R. at 826 (citing *Bank One, NA v. Leuellen*, 322 B.R. 648 (S.D. Ind. 2005)). This Court agrees that authority for approving the modification exists in 11 U.S.C. §§ 1329(a)(1) and 1329(a)(3). "With respect to section 1329(a)(1), the modification reduces 'the amount of payments on claims of a particular class provided for by the plan.'" *Id*. Under 11 U.S.C. § 1329(a)(3), a debtor seeking a modification "to surrender collateral alters 'the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.'" *Id*. Surrendering collateral as the Motion proposes "is a payment to the creditor in the form of the value represented by the collateral, and is a payment 'other than under' the confirmed plan." *Id*. Thus, "a plan modification addressing surrender, therefore, reduces the distribution to the affected creditor to reflect the surrender." *Id*. This is a permissible change under § 1329(a).

The incorporation of 11 U.S.C. §§ 1322 and 1325 into 11 U.S.C. § 1329 further supports allowing a plan modification to surrender collateral. Specifically, "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." 11 U.S.C. § 1329(b)(1). 11 U.S.C. § 1322(a) outlines the mandatory contents of a Chapter 13 plan for it to be confirmable. The contents of a Chapter 13 plan which are permissible but not mandatory in order for a plan to be confirmable are located in 11 U.S.C. § 1322(b). Thus, a plan may "modify the rights of holders of secured claims . . . or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1322(b)(2). A plan may also "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. § 1322(b)(8).

Once a plan which complies with 11 U.S.C. § 1322 is proposed, the plan and its proponent(s) must meet the 11 U.S.C. § 1325 requirements to achieve confirmation, or in this case, modification. One of these requirements for each of a plan's allowed secured claims is that:

> (A) the holder of such claim has accepted the plan;
> (B)
>     (i) the plan provides that–
>         (I) the holder of such claim retain the lien securing such claim until the earlier of–
>             (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>             (bb) discharge under section 1328; and
>         (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such

>>holder to the extent recognized by applicable nonbankruptcy law;
>(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>(iii) if--
>>(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>>(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
>(C) *the debtor surrenders the property securing such claim to such holder.*

11 U.S.C. § 1325(a)(5) (emphasis added). Recently, in considering 11 U.S.C. § 1325(a)(5), the Fifth Circuit affirmed that there are different possible ways to treat a secured claim to achieve confirmation of a plan. *In re Barragan-Flores*, 984 F.3d 471, 474 (5th Cir. 2021). Surrender is one of those options. *Id*. A debtor, however, may not select a different 11 U.S.C. § 1325(a)(5) option for different pieces of collateral securing the same claim. *Id*. Where multiple pieces of collateral secure the same claim, all collateral securing the claim must be treated using the same 11 U.S.C. § 1325(a)(5) option. In this case, MobilOil FCU holds two claims secured by separate collateral, and Debtors are surrendering all of the collateral securing both claims. Thus, the Motion complies with *In re Barragan-Flores*. Debtors also seek relief expressly contemplated by 11 U.S.C. § 1325(a)(5), which is incorporated into 11 U.S.C. § 1329 governing modifications.

Allowing a Chapter 13 plan modification to surrender collateral will not always be

appropriate. In order to achieve confirmation, a plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). MobilOil FCU did not expressly argue that the Motion was not proposed in good faith, but did argue that allowing the proposed modification would be "inequitable and improper."[27] It is true that "bankruptcy courts are courts of equity." *In re Nikoloutsos*, 199 F.3d 233, 236 (5th Cir. 2000). "A court of equity is enabled to frustrate fraud and work complete justice." *In re DLN Properties, LTD*, No. CV 17-10554, 2018 WL 3109641, at *5 (E.D. La. June 25, 2018) (quoting *Tex. Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947)). This does not mean that the Court can "create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986). Equity follows the law. *United States v. Coastal Ref. & Mktg., Inc.*, 911 F.2d 1036, 1043 (5th Cir. 1990). MobilOil FCU's equity argument implicates Debtors' good faith because equity and good faith are closely linked. "A court of equity may in its discretion...grant or deny relief upon performance of a condition which will safeguard the public interest... these principles are a part of the control which the court has over the whole process of formulation and approval of plans of composition or reorganization...." *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (referring to bankruptcy court's responsibility to enforce standard of

---

[27] Objection by Mobiloil FCU to Second Motion to Modify Confirmed Chapter 13 Plan, ECF No. 70.

good faith) (citing *American United Mut. Life Ins. Co. v. City of Avon Park*, 311 U.S. 138, 145 (1940)).

Whether a debtor displayed good faith to achieve confirmation in the Fifth Circuit under 11 U.S.C. § 1325(a)(3) "is determined under the totality of the debtor's circumstances." *In re Price*, 609 B.R. 475, 479 (Bankr. N.D. Tex. 2019) (citing *Pub. Fin. Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983)). The Fifth Circuit has described the good faith analysis as follows:

> The good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws. The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case.

*Matter of Elmwood Dev. Co.*, 964 F.2d 508, 510 (5th Cir. 1992). To make a determination of good faith, "the court considers such factors as (1) the reasonableness of the proposed repayment plan, (2) whether the plan shows an attempt to abuse the spirit of the bankruptcy code, (3) whether the debtor genuinely intends to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan." *In re Stanley*, 224 Fed. Appx. 343, 346 (5th

Cir. 2007). Debtors have the burden to establish their good faith. *In re Aprea*, 368 B.R. 558, 567 (Bankr. E.D. Tex. 2007).

The totality of the circumstances in this case indicate Debtors' Motion has been proposed in good faith. There was no evidence in Mrs. Jenkins' testimony of either misrepresentation, unfair manipulation, or an underlying scheme of fraud with an intent not to pay. In fact, Debtors have paid a significant amount of MobilOil FCU's claims secured by the collateral to be surrendered. MobilOil FCU produced no controverting evidence of depreciation occurring through some fault of the Debtors or Debtors' son. "[A] secured creditor always bears some measure of risk that collateral will depreciate." *In re Sellers*, 409 B.R. 820, 830 (Bankr. W.D. La. 2009). Depreciation caused unfairly by Debtors would give rise to an issue of good faith. "Unfair prejudice may arise where depreciation is extraordinary and results from the actions of the debtor." *In re Sellers*, 409 B.R. at 829 (referencing In re Butler, 174 B.R. 44, 48 (Bankr. M.D. N.C. 1994)) (debtor wrecked car after confirmation without maintaining insurance and then attempted surrender). Mobiloil FCU did not present any evidence that Debtors either caused or accelerated depreciation of the collateral in this case. Rather, Mrs. Jenkins' testimony about Debtors' circumstances and the reasons necessitating surrender reflects Debtors' recognition of the limitations on their ability to pay, and an attempt to formulate a plan within those limitations. Debtors' proposed repayment plan is reasonable, which is reflected by the Chapter 13 Trustee's recommendation in favor of modification.

The Motion is also within the spirit of the Bankruptcy Code.  The *Sellers* court described this spirit as follows:

> Modification under section 1329 'is based on the premise that, during the life of the plan, circumstances may change, and parties should have the ability to modify the plan accordingly.' *Meza v. Truman (In re Meza)*, 467 F.3d 874, 877 (5th Cir.2006).  In *Meza*, the Fifth Circuit rejected the requirement in some jurisdictions that debtors demonstrate a 'substantial or unanticipated change in circumstances' as a threshold to modifying a plan under section 1329.

*In re Sellers*, 409 B.R. 820, 824 (Bankr. W.D. La. 2009).  Debtors have demonstrated an "unanticipated change in circumstances" even though they were not technically required to do so.  Such an unanticipated change in circumstances is relevant to a good faith analysis.  It is unreasonable to expect Debtors to foresee the mechanical failures of one of their vehicles if they did not cause those failures, and it is not an abuse of the spirit of the Bankruptcy Code to allow them to surrender such a vehicle in this case.  Rather, it would be an abuse of that spirit to require Debtors to continue to pay for a vehicle which has failed mechanically and which they can no longer afford, especially when the modification seeking surrender has been proposed in good faith.

### IV. Conclusion

For the reasons stated above, the Court finds that the "Second Motion to Modify Confirmed Chapter 13 Plan" filed by the Debtors, Larry S. Jenkins and Jennifer W. Jenkins on January 17, 2022 should be **GRANTED** and Mobiloil Federal Credit Union's objection to the Motion **OVERRULED.**

Debtors and the Chapter 13 Trustee are directed to upload to the Court for review

and execution, **within fourteen (14) calendar days of entry of this Memorandum**, an "Order Modifying Confirmed Chapter 13 Plan" in the form required by TXEB Local Form 3015-e, which should reflect the specific agreement made by Debtors and the Chapter 13 Trustee to resolve the Chapter 13 Trustee's objection to the Motion.

Signed on 04/21/2022

_____
THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE